Closing up if you're comfortable. I'm comfortable with that. Was it proper for the district court to take this case away from the jury or was there a question of fact? My name is Anthony Bribriesco and along with my brother Andrew Bribriesco and my father Bill Bribriesco, we represent Modesto Paulino, the injured worker. Modesto Paulino was hired by Sea-Tech, a construction company in the early 2000s. Sea-Tech brought Modesto across the country working on different sites and one day Modesto was working very high above the ground and he fell 70 feet severing his spinal cord at a level where he lost all control of his legs, his bladder control, and his bowel control. His employer Sea-Tech during that time when he was a migrant construction worker paid for his hotel rooms. Modesto did not have a home, did not have a van, did not have a support system. That was all before the injury. After the injury, they turned it over to their workers compensation insurance company and at that time, it's now called Charters, but it was AIG at that time. AIG, we submit, given looking at the evidence and light most favorable to the injured worker, the non-moving party Modesto Paulino, a jury could find that AIG acted in bad faith when it chose first to call INS to have Modesto deported. Then when that didn't work, to have to refuse to pay the authorized medical provider which was providing shelter for Modesto so that they would ultimately dump their patient. When that didn't work, they presented for an argument that they knew was legally flawed to the court, the immigration status of Modesto Paulino. So first, in the record, it's absolutely clear that AIG contacted INS on three separate occasions and three separate times from three separate adjusters. That a reasonable jury could find that AIG was contacting INS to have Modesto Paulino deported. Did the district court deal with this argument? Yes, Your Honor. It was briefed by the, and the district court found that there was no evidence in the record to present that to a jury, but yes it was. So the district court found there was no evidence that they contacted the INS? They found that that was not, that a jury could not make the reasonable inference that INS, that they were attempting to deport him in bad faith. Okay, so what what exactly is the evidence that they were attempting to deport him? Well, it's clear in their own, in AIG's own claims notes, as I mentioned, which is cited in the, in our brief, and which was presented to the district court, that each adjuster contacted INS, ultimately hoping that they would pick him up and deport him. Okay, so there was certainly evidence, I think there was evidence that they contacted him. Where's the evidence that they were hoping he would be deported as a result of that? Well, the reasonable inference is that why else would you call INS? AIG claims in their brief that it was for federal housing. Well, I asked the corporate representative under oath at his deposition, and he said, well, it was to determine federal housing. Now, I don't think, I think a jury can look through that thinly veiled excuse and say INS has nothing to do with federal anyway, even if he had been deported? They would, but the problem with that situation is... So why is that material then? It's material because he needed constant monitoring. As I mentioned, he had no control over his legs. He was at a high risk for pressure sores. He was at high risk for UTIs. So the question would be, during, while he's detained, during his deportation proceedings, would he be receiving adequate medical treatment? And then, where, what, where, what shelter would he have to actually receive medical treatment when he was deported to Mexico? There were so many unknown factors, but what was known was that Modesto, there was extraordinary circumstances surrounding Modesto's case. AIG, through their corporate representative, admitted that. The expert, their expert, a Deputy Workers' Compensation Commissioner, at the same time that the proposed decision was decided, admitted that it was their expert, an in-house attorney for another large insurance company, admitted that AIG knew there was extraordinary circumstances surrounding Modesto Polino, and the district court, during the underlying workers' compensation case, looked at all the case law and said, Modesto is truly helpless. He's a prisoner of his injuries. And if we look at the case law, Iowa Code Section 8527, that has always been interpreted broadly and liberally in favor of the injured worker. And before Modesto's injury, before AIG's decision to deny benefits, under Iowa Code Section 8527, an injured worker was entitled to a van, modified home modifications, and even a laptop. Because the Iowa Supreme Court looked at the word appliance, and the appliance in Iowa Code Section 8527, they interpret that broadly and liberally, saying that an appliance is an ends to a mean. And in this case, the ends would be Modesto's survival. Before he could work, his shelter was provided to him by his employer. After his injury, he had no shelter. He was essentially homeless before and after. Something that, looking at the case law, is absolutely clear. Well, those cases are all pretty fact-intensive, aren't they? Yes, Your Honor, and that is an excellent point, because we're asking for a jury to decide a factual question. Yeah, but it's also a bad faith case, too. It's not the underlying case that we're talking about here. We're talking about whether it was fairly debatable, right? Yes, which is the same thing as whether they lacked a reasonable basis. Now, did they have a reasonable basis? What they're saying is, well, there's no bright-line rule saying that Modesto can have shelter. But the Iowa Supreme Court would never make a bright-line rule, either before Modesto's case or after his case. Because the statute itself doesn't say living expenses, does it? No, and it doesn't say laptop, it doesn't say van, either, and it doesn't say home modifications. All things that the Iowa Supreme Court agreed were that an insurance company had to pay. That's my point, though. It's a very fact-intensive question. And the fact-intensive questions were all the facts were undisputed. That he was, he didn't have a home before, he didn't have a car, he didn't have a support system. What about the fact that the initial, I think it was a deputy, went the other way, taking into account immigration status. And AIG, through their own corporate representative, admitted that you cannot take into account immigration status, but yet their attorney, during the workers' compensation hearing, argued that it was extremely relevant to the case. And so it was no surprise when that proposed decision said the central issue in this case is Modesto Plino's immigration status. That is based on bad law, it was repudiated before that proposed decision, and it was repudiated after, directly, by the commissioner who says you don't take into account immigration status. That case stands alone and will never be cited, or at least will never be correctly cited by any court in any case. I will reserve the remainder of my time for rebuttal unless there's any other questions. Very well, we will save this time for you for rebuttal, and we will now move on to Ms. Merritt, who represents the Appalachee. May it please the court, my name is Stephanie Merritt, and along with my partner, Corinne Sweeney, at council table, we represent the Appalachee so everyone in the room can hear you clearly. Okay, thank you, Your Honor. There's no dispute that Paulino's work injuries are tragic. However, the issue before this court involves his claim of bad faith against Chartus. Specifically, the issue is whether Chartus's denial of Paulino's non-medical living expenses, which include rent, utility, food, and cable television, at CCS after May 6, 2006, was fairly debatable as a matter of law. The standard for bad faith is a key component of this case, because for Paulino to have no reasonable basis for denying benefits, and that the insurer knew or had reason to know that that denial was without a reasonable basis. The first element, whether there was a reasonable basis, is an objective element, and the one that's at issue in this case. Under Iowa law, a reasonable basis exists for the denial if the claim is fairly debatable as to either matters of fact or law. And when a claim is open to dispute on any logical basis, it is fairly debatable. It's important to remember that the focus is on the existence of a debatable issue, and not on whether the insurer's position was ultimately correct. Even if the insurer's position is ultimately found to lack merit, that is insufficient itself to establish the lack of a reasonable basis for denial. And whether a claim is fairly debatable is generally decided as a matter of law. Chartus's denial of the living expenses at CCS is fairly debatable as a matter of law, because there's no genuine factual issue in this case. While the underlying dispute regarding the reasonable and necessary medical appliances is a factual one, whether Chartus's position in that dispute was fairly debatable is a question of law in this bad-faith proceeding. The denial of Paulino's living expenses was based on Chartus's conclusion that Iowa law did not require it to pay for those expenses. As noted earlier by Judge Grunder, this was supported by the first judicial officer that heard the claim, the Deputy Workers' Compensation Commissioner. He presided over the arbitration hearing, heard all the testimony and evidence that were submitted at that time, and determined that Paulino was not entitled to payment for his CCS living expenses of the rent, food, TV, and utilities, because he did not establish they were compensable under 8527. And under Iowa law, in the case, the Iowa Supreme Court provides that a difference of opinion among judicial officers is evidence that the claim is fairly debatable. Specifically, the court cited a law review article noting that the most reliable method of establishing an insurer's legal position as reasonable is to show that a judge in the relevant jurisdiction has accepted it as correct. And it's not necessary for that favorable decision to have been in place at the time of the denial, because if an impartial officer has agreed with the insurer's position, it's hard to argue that that position was not reasonable. Do you have any comment on what was said about your client contacting the immigration authorities? Yes, Your Honor. With respect to the immigration issue, first of all, I think as pointed out by Judge Grunder, the district court found in its decision that there's no evidence that his immigration status was a basis for the denial of his living expenses. There are notes in the record that there was contact. Part of it involved an investigation about whether there was gonna be a third party claim as a result of the fall with the harnesses and those things. There were also issues with respect to housing because he did not have a valid social security number. But again, the argument that his immigration status... What is the third party claim with the harnesses? How does that relate to the immigration service? There was an investigation as to part of that, Your Honor. And I don't think it's clear in the record how that all arrived, but that was part of an investigation that was going on. I still don't understand what you mean. Why would the immigration authorities investigate the harness manufacturing? I think there was a separate investigation. It wasn't INS that was doing that investigation. I believe there was Paulino himself or his representatives were investigating that as an issue when part of the investigation contact was made with INS. But I don't believe it's directly relevant to that determination. And... Why did the company contact INS? What does the record show about that? And I think the argument is that an inference could be made that it was for an impermissible... I mean, not impermissible, but the purpose of avoiding payment. And I don't think the record is clear on the contact for that. I believe they... Obviously, as part of the claim, they got information, they got a social security number for him. When they checked the social security number, it did not match with his information. So I believe there was contact made regarding that. But the argument that his immigration status is the base for denial just simply doesn't go with Chargis' acceptance of the claim, their ongoing payment of indemnity benefits, their ongoing payment of medical benefits and equipment. And furthermore, with respect to the issue of deportation, again, there was no reason or incentive for Chargis to have him deported. Mr. Kraft testified on behalf of Chargis that even if he had been deported, Chargis would still have been responsible for paying him workers compensation benefits under Iowa law. So they would still have had to pay him whether he's in this country or in another country. They're still responsible for those benefits, medical benefits, indemnity benefits to Mr. Paulino. And the cases, in order to make that determination, obviously, we've talked about Iowa Code Section 8527. And as noted by Judge Render earlier, that section does not specifically list living expenses as something that is covered. And also, at the time of denial, there was no payment for an injured worker's underlying living expenses, which Paulino admits. And this does not support his position of bad faith, but instead, it demonstrates a reasonable basis for denial. The lack of any express rule or law means there's an inherent uncertainty and that the denial is not unreasonable and therefore is fairly debatable. And in those three cases that have been cited by all the parties and the court below, the Siason case, the Sia case, and the Castle case, in all of those cases, the court noted the rare and unique circumstances in each situation where they ended up determining that the item asked for was in appliance under 8527. Likewise, in this case, on appeal, both the Commissioner and Judge Gamble made similar references regarding Paulino's living expenses. Specifically, Commissioner Godfrey stated that living expenses for recovery from an injury are not usually compensable medical expenses, but may become so upon a showing of special circumstances. And Judge Gamble specifically stated that at issue are expenses which, in almost every case, would not be considered appliances under 8527. These statements of the unique circumstances and situation illustrate the basis of a logical dispute or fairly debatable as a matter of law. Furthermore, under 8527, those cases also talk about that an appliance under that situation is something that replaces a function lost as a result of the work injury. Mr. Paulino needed food before the injury. It's not something that's replacing the function that he lost as a result of that work injury. Due to the lack of clear guidance from Iowa statutes, rules, and case law, and the uniqueness of Paulino's situation, Charters had a reasonable basis to deny Paulino's non-medical living expenses of rent, utilities, food, and cable TV at CCS after May 6, 2006, when he no longer needed to reside there for rehabilitation. The District Court properly granted summary judgment because the denial of Paulino's living expenses by Charters was fairly debatable as a matter of law. Therefore, unless there are any further questions, I respectfully request that you affirm the District Court's summary judgment order. Very well. I hear or see no indication for additional questions at this point. We thank you for your attendance here this morning. Thank you, Your Honor. And Madam Clerk, does the appellant have additional time? Yes, Your Honor. He has one minute and 22 seconds. One minute and 20? Can you put the wrap on it in one minute and 20? We could give you a little more time. Yes, Your Honor. If you think I need more time, that'd be great, but I can put a wrap on it in a minute. We'll buy the minute. Okay. AIG's incentive is clear. They only have to pay for medical benefits as long as Modesto Paulino lives. Once he dies, he no longer have to have to pay for benefits. So in the deportation process, someone as fragile and truly helpless as Modesto could easily have passed away. And then second, when they stopped paying for the authorized medical provider, CCS, they were hoping that they would dump his patient. And in fact, when the tens of thousands became hundreds of thousands, they locked Modesto out when he visited his cousin for Christmas. And he came back. And there's a two week period of time in the claims note when there's absolutely no activity. And they did not know where he was living or even a phone number to contact him. So the motive becomes absolutely clear, is if Modesto Paulino dies, AIG no longer has to pay any more workers' compensation benefits. As far as the district court, we believe he erred because he stepped into the shoes of the jury. This is like any other case where the summary judgment motion, where the jury decides questions of fact. Although Modesto is an undocumented worker, this case will be applied to all workers, including citizens. And their argument that they're making is, well, if 8527 doesn't specifically list living expenses, the claim is fairly debatable. If that argument wins today, that essentially eradicates first party for a bad faith for medical benefits under 8527. Given no further questions, thank you. Very well. The case has been well presented by both sides. And we will take this as the panel making the initial decision, at least in this case. We will make every effort to render it due course. The issues are serious and, of course, to the parties. And they have a right to know promptly what our take on your arguments consist of. So we thank you for your attendance.